O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD C. HALL, | CV 05-1977 ABC (AJWx) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CITY OF LOS ANGELES, et al., | |
| Defendants. | |

Pending before the Court is the motion for summary judgment filed by Defendants City of Los Angeles, Detective Kenneth Crocker, and Detective Mark Arneson. (Mot. (Docket # 195).) Plaintiff Harold Hall filed an opposition, and Defendants filed a reply. (Opp'n (Docket # 198); Reply (Docket # 206).) The parties also filed supplemental briefing requested by the Court. (Defs.' Suppl. Brief (Docket # 216); Plf.'s Suppl. Opp'n (Docket # 217); Defs.' Suppl. Reply (Docket # 220).) The motion came on for a hearing on April 19, 2010. Having reviewed the materials presented, the record, and arguments of counsel, the Court hereby **GRANTS** the motion.

# I.   FACTUAL BACKGROUND

This case arises out of a series of unfortunate events.[1]  On June 27, 1985, siblings Nola Duncan and David Rainey were brutally murdered.  (PRSUF 1; DRSUF 33-34.)[2]  On August 17, 1985, Hall was arrested for a robbery unrelated to the Duncan-Rainey murders.  (PRSUF 4; DRSUF 6.)  Due to his role as a witness and informant in an unrelated gang shooting (the "54th Street shooting") (PRSUF 9; DRSUF 3), Hall was confined with other jailhouse informants separate from the general population to protect him from retribution from those against whom he testified (see DRSUF 8).  That protection was secured by Detective Wayne Dufort, who was investigating the 54th Street shooting.  (PRSUF 8; DRSUF 8.)  Hall was afraid that he would be subjected to significant violence if he were moved to the jail's general population.  (See DRSUF 11; see also Hall Decl. ¶¶ 2, 13-14 (Docket # 212).)

After officers received information from jailhouse informants linking Hall to the Duncan-Rainey murders (see PRSUF 10-12, 14-19), Hall was questioned about those murders (PRSUF 23).  The detectives

---

[1]   The Court takes the evidence in the light most favorable to Plaintiff.  In response to Plaintiff's papers, Defendants filed myriad evidentiary objections.  (Defs.' Joint Evidentiary Objections to Plf.'s Evidence (Docket # 222).)  These objections are identical or nearly identical to those raised previously to Judge Schiavelli with respect to the initial summary judgment motion.  (See Defs.' Joint Evidentiary Objections to Plf.'s Evidence (Docket # 115).)  Judge Schiavelli largely overruled the objections, though he did sustain a few of them.  (February 5, 2008 Minute Order at 4-6 (Docket # 163) ("First MSJ Order").)  Defendants provide no reason to depart from Judge Schiavelli's rulings, and the Court sees no reason to do so.

[2]   For ease of reference, the Plaintiff's Response to Defendants' Statement of Undisputed Facts (Docket # 201) is referred to as the "PRSUF" and the Defendants' Response to Plaintiff's Amended Statement of Undisputed Facts (Docket # 221) is referred to as the "DRSUF."

principally investigating the Duncan-Rainey murders were Arneson and
Crocker.  (PRSUF 3.)[3]  On September 5, 1985, Hall was interviewed by
Crocker and Detective Lionel Roberts.  (PRSUF at 23.)  That interview
lasted roughly one hour and Hall was not given his <u>Miranda</u> warnings
during it.  (PRSUF at 23-24.)  Hall testified that the detectives
accused him of being involved in the murders, and that he denied such
involvement.  (PRSUF 32.)  Hall did tell the detectives that he had
heard about the Duncan murder, though, and he and the detectives
discussed the purported involvement in the murders of an acquaintance
of Hall's, Jerry Knox.  (<u>See</u> PRSUF at 25, 28-30.)  Hall actually knew
that Knox was in prison at the time of the murders and could not have
participated in them.  (PRSUF 31.)

     Hall was interviewed again for about an hour on September 9, 1985
by Arneson and Crocker.  (PRSUF 33-34.)  During that interview, Hall
identified Knox in a photo lineup.  (PRSUF 36.)

     Defendants subsequently became aware that Knox was in prison at
the time of the murders.  (PRSUF 37.)  Defendants confronted Hall with
that discovery on September 11, 1985.  (PRSUF 37.)[4]  During the
ensuing interrogation, Hall confessed to various crimes including

---

[3]  Plaintiff requests that the Court take judicial notice of
Arneson's conviction of 46 felonies in 2009.  (<u>See</u> Request for
Judicial Notice (Docket # 199); <u>see also</u> DRSUF 26 ("Arneson is a
dishonest person").)  Plaintiff argues that the evidence undermines
Arneson's credibility.  (Request for Judicial Notice at 2.)  It is not
proper for the Court to make credibility findings on summary judgment,
however.  <u>See, e.g.</u>, <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1095 n.11
(9th Cir. 2008).  The Court views the evidence in the light most
favorable to Plaintiff.  <u>See</u> <u>id.</u>  Accordingly, Plaintiff's request for
judicial notice is **DENIED**.

[4]  Several jailhouse informants had provided information
purportedly implicating Hall in the murder.  By September 11, 1985,
Arneson and Crocker knew that some of that information was not
accurate.  (<u>See</u> DRSUF at 47, 50.)

stabbing Duncan.  (See DRSUF 23.)  That interrogation is the focus of the pending motion.  Hall described the interrogation as being conducted in several phases.  (PRSUF 39.)  The first phase was conducted by Dufort and Detective Aaron Martin with respect to the 54th Street shooting.  (PRSUF 40.)  Arneson had contacted Dufort earlier that day, "insisting" that he come to the jail to interview Plaintiff.  (See DRSUF at 12.)  The first phase began at approximately 8:00 a.m. and continued until sometime near noon.  (PRSUF 40.)

Following that phase, Hall was moved to a different portion of the same room where he was interviewed by Dufort, Martin, Crocker and Arneson regarding the Duncan-Rainey murders.  (See PRSUF 41-42, 44.) Hall's deposition testimony suggests that this phase continued until roughly 6:00 p.m.  (See PRSUF 43.)[5]

During this stage of the questioning, Hall implicated himself in the Rainey-Duncan murders.  (See PRSUF 44; DRSUF 23; ; see also Plfs.' Ex. 147 (Docket # 212).)[6]  Arneson did most of the questioning about the Duncan murder, using the "we know more than you think we know" technique.  (DRSUF 19.)  Arneson falsely told Hall that there was physical evidence tying him to the murder scene.  (PRSUF 63.)  Hall also argues the investigators used Dufort's presence at the interrogation as a threat that Hall could be placed in the jail's

---

[5]  Hall estimated that this phase of the interrogation lasted from "12:00 to until maybe 6:00," but he was "not [] sure."  (Hall Dep. at 184:1-3 (Shapero Decl. Ex. 2).)  Defendants' evidence suggests that it may have been completed by about 1:30 p.m.  (See PRSUF 45.) Taking the evidence in the light most favorable to Hall, the Court assumes the questioning on the Duncan-Rainey murders lasted until 6:00 p.m.

[6]  Defendants acknowledge that they knew that certain details of the confession did not match other evidence they had obtained.  (See DRSUF 52-53.)

general population, where he would be vulnerable to violence stemming from his testimony regarding the 54th Street shooting.  (*See* DRSUF 20.)  In particular, Hall recounts the following exchange:

> Arneson said, "Let's go file on him since he doesn't want to tell us what we want to know.["]  Dufort said, "Harold, don't you realize that if they file this murder on you and you're convicted, you're going to be in prison with Ace Capone, the same guy you testified against.  You know as well as I do that they'll kill you.["]  He added, "You think all the inmates are trying to kill you now, wait till [sic] you get to state prison."  Crocker said, "You don't want to go to prison and face the guy you testified against, do you?  You know that was a big thing, Harold, the 54th Street murders.  Ace Capone's homeboys are going to be after you."  Dufort said, "Think about it, Harold.  If you go to prison, every Blood gang is going to be after you for testifying against Ace Capone, and all the Crips are going to be after you for driving Bloods to the party."

(Hall Decl. ¶ 10.)  Hall asserts that he falsely confessed because he felt he had to do so to remain protected from those who he believed would kill him.  (PRSUF 66, 68.)[7]

Hall was not given his <u>Miranda</u> admonitions while he was interrogated about the Duncan-Rainey murders and the 54th Street shooting.  (DRSUF 16.)  Midway through the interrogation, he requested to speak with his attorney, but Arneson told him that only guilty people need to speak with attorneys and continued questioning him. (DRSUF 22.)  Hall was handcuffed throughout the interrogation and was not given food during the interrogation.  (PRSUF 51, 55.)  Hall's recollection is that he was not allowed to use the bathroom during this second phase of the interrogation, though he used it earlier that morning and may have used it at the conclusion of the second phase of

---

[7]  Following the confession, Arneson and Crocker left to interview another suspect (PRSUF 46) and Martin and Dufort interrogated Plaintiff about the 54th Street shooting (<u>see</u> PRSUF 48).

the interrogation.  (See PRSUF 57-59.)

Hall was eventually charged with the Rainey-Duncan murders.  At trial, the prosecution submitted evidence of Plaintiff's written confession, two oral statements, and notes provided to detectives by jailhouse informant Cornelius Lee.  Hall was convicted of both murders and received life imprisonment without parole.

He then timely filed a habeas petition pursuant to 28 U.S.C. § 2254.  The Ninth Circuit ultimately found that petition meritorious and overturned Hall's convictions for the Rainey-Duncan murders.  Hall v. Dir. of Corrections, 343 F.3d 976 (9th Cir. 2003).  The Ninth Circuit reversed the conviction for the Rainey murder due to insufficient evidence.  The Ninth Circuit reversed the conviction for the Duncan murder because Hall's constitutional due process rights were violated as informant Lee admitted that he had lied at Hall's preliminary hearing and deliberately fabricated the notes used against Hall at trial in an effort to frame him.  Hall was released in August 2004 and the State has not attempted to retry him.

**II.  PROCEDURAL BACKGROUND**

This suit for damages under 28 U.S.C. § 1983 followed Hall's release.  The matter was previously handled by Judge Schiavelli, who granted Defendants' first summary judgment motion.  (First MSJ Order.)  Prior to Judge Schiavelli's hearing on the first summary judgment motion, Plaintiff voluntary dismissed several claims.  Accordingly, Judge Schiavelli's analysis focused on Plaintiff's claim of deliberate fabrication of evidence against Arneson and Crocker.  That claim was predicated on the Ninth Circuit's decision in Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc), which held that there is "a clearly established constitutional due process right not to be

subjected to criminal charges on the basis of false evidence that was

deliberately fabricated by the government." The Ninth Circuit

provided two avenues by which a plaintiff can succeed in bringing such

a claim; namely, a plaintiff

> must, at a minimum, point to evidence that supports at
> least one of the following two propositions: (1)
> Defendants continued their investigation of [Plaintiff]
> despite the fact that they knew or should have known
> that he was innocent; or (2) Defendants used
> investigative techniques that were so coercive and
> abusive that they knew or should have known that those
> techniques would yield false information.

Id. at 1076 (emphasis in original).

In ruling on the first summary judgment motion, Judge Schiavelli

found that Plaintiff failed to produce evidence sufficient to create a

triable issue of fact on Devereaux prong (1). Judge Schiavelli also

determined that summary judgment was appropriate as to Devereaux prong

(2). First, Judge Schiavelli ruled that collateral estoppel precluded

Plaintiff from meeting the Devereaux prong (2) standard with evidence

of the purportedly coercive interrogation of Plaintiff himself because

the Ninth Circuit's order granting habeas relief had found that it was

not coercive.[8] Second, Judge Schiavelli ruled that the other

submitted evidence was insufficient to raise a triable issue of fact

on Devereaux prong (2).[9]

---

[8] The Ninth Circuit's opinion granting habeas relief included a
footnote that stated: "Hall also claims: . . . (2) that his September
11, 1985 confession was coerced and involuntary . . . We have
examined the record and find that these claims are without merit."
Hall, 343 F.3d at 981 n.5.

[9] Judge Schiavelli also ruled that Plaintiff conceded that his
evidence was insufficient to warrant a trial on the claim against the
LAPD and City of Los Angeles pursuant to Monell v. Dep't of Social
Servs., 436 U.S. 658 (1978). The Ninth Circuit subsequently reversed
that aspect of the First MSJ Order.

1   Plaintiff appealed to the Ninth Circuit.  In a memorandum

2   disposition, the Ninth Circuit affirmed in part, reversed in part and

3   remanded.  The Ninth Circuit affirmed the entry of summary judgment as

4   to Devereaux prong (1), agreeing that Plaintiff failed to submit

5   sufficient evidence that the Defendants knew or should have known he

6   was innocent.  With respect to Devereaux prong (2), the Ninth Circuit

7   reversed the Court's ruling that collateral estoppel prevented the

8   court from analyzing Plaintiff's evidence that his interrogation was

9   coercive and abusive.  The Ninth Circuit remanded on that issue.

10   Defendants filed the pending summary judgment motion on remand,

11   seeking judgment with respect to Devereaux prong (2), as well as the

12   claim for Monell liability.

13   **III. STANDARD**

14   Summary judgment shall be granted where "the pleadings, the

15   discovery and disclosure materials on file, and any affidavits show

16   that there is no genuine issue as to any material fact and that the

17   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

18   56(c).  A defendant who moves for summary judgment bears the initial

19   burden of proving the absence of any triable issue of fact but need

20   not produce evidence negating elements of a claim for which the

21   plaintiff bears the burden of proof at trial.  Celotex Corp. v.

22   Catrett, 477 U.S. 317, 323-25 (1986).

23   A non-moving plaintiff can defeat summary judgment by producing

24   evidence establishing a "genuine issue" of material fact as to the

25   essential elements of the plaintiff's case, and on which the plaintiff

26   would bear the burden of proof at trial.  See id. at 322-23.  An issue

27   of fact is a genuine issue if it reasonably can be resolved in favor

28   of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-

51 (1986).  The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.  Id. at 255.  But "mere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.  Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).

**IV.  ANALYSIS**

Proceeding with Plaintiff's claim on remand raises several unresolved issues.  The first question before the Court is whether assertions that a suspect was coercively interrogated could constitute a cognizable claim under Devereaux prong (2).  The Court ordered supplemental briefing based on the recognition that Devereaux and the subsequent Ninth Circuit cases applying Devereaux prong (2) address techniques used in interviewing witnesses.  This case, by contrast, turns on the purportedly coercive interrogation of Plaintiff as a suspect.[10]  Hence, the Court first must determine whether Devereaux prong (2) applies to Plaintiff's claim at all.  As a precursor to that

_____

[10]  In opposing the first summary judgment motion, Plaintiff argued that he had sufficient evidence to create a material issue of fact on Devereaux prong (2) based on other evidence, like Defendants' failure to follow leads on other suspects, Defendants' failure to account for inaccuracies within Plaintiff's confession and the forensic evidence, and informant Lee's falsification of evidence against Plaintiff.  (See First MSJ Order at 8-9.)  Judge Schiavelli found such evidence insufficient to survive summary judgment.  (Id.)  On remand, Defendants argue that Plaintiff failed to appeal that ruling and, thereby, waived the ability to argue that such evidence supports his claim under Devereaux prong (2).  (Mot. at 9-10; Reply at 1.)  Plaintiff's opposition brief does not address that argument, and the Court takes that silence as acquiescence that these arguments were waived by his failure to appeal them.  See Newdow v. Congress of the United States of America, 435 F. Supp. 2d 1066, 1070 n.5 (E.D. Cal. 2006), aff'd sub nom. Newdow v. Lefevre, __ F.3d ___, 2010 WL 816971 (9th Cir. Mar. 10, 2010); see also Local Rule 7-12.  At any rate, even considering that evidence, Plaintiff has not created a triable issue of fact under Devereaux prong (2).

inquiry, the Court must decide whether such a determination is
precluded by either the law of the case doctrine or the mandate rule.
Second, assuming Plaintiff can bring a claim under <u>Devereaux</u> prong (2)
in this context, the parties dispute the proper standard to determine
whether the techniques rise to the level required to state a
deliberate fabrication of evidence claim, and whether Plaintiff has
created a genuine issue of fact under that standard.  Third, the Court
must determine whether Arneson and Crocker are entitled to qualified
immunity.  Fourth, the Court must determine whether Plaintiff has
created a triable issue of fact on his <u>Monell</u> claim against the City.

**A.    NEITHER THE LAW OF THE CASE NOR THE MANDATE RULE PRECLUDE EVALUATION OF THE APPLICABILITY OF <u>DEVEREAUX</u> PRONG (2).**

Plaintiff argues as a threshold matter that granting summary
judgment on the ground that Plaintiff's claim is not cognizable under
<u>Devereaux</u> prong (2) is barred by the law of the case and the mandate
rule.  (Suppl. Opp'n at 14-16.)  The law of the case doctrine provides
that "a court is generally precluded from reconsidering an issue
previously decided by the same court, or a higher court in the
identical case." <u>United States v. Lummi Indian Tribe</u>, 235 F.3d 443,
452 (9th Cir. 2000).  The "mandate rule," under which a district court
has no power or authority to deviate from a mandate of the Court of
Appeals, is a more powerful version of the law-of-the-case doctrine,
which prevents courts from reconsidering issues that have already been
decided in the same case.  <u>See Role Models Am., Inc. v. Geren</u>, 514
F.3d 1308, 1311 (D.C. Cir. 2008).  Under the mandate rule, "the
decision of an appellate court on a legal issue must be followed in
all subsequent proceedings in the same case." <u>In re Rainbow Magazine,
Inc.</u>, 77 F.3d 278, 281 (9th Cir. 1996) (quoting <u>Herrington v. County</u>

of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993)).  "'For the doctrine []
to apply, the issue in question must have been decided explicitly or
by necessary implication in [the] previous disposition.'"  Rebel Oil
Co., Inc. v. Atlantic Richfield Co., 146 F.3d 1088, 1093 (9th Cir.
1998) (quoting Milgard Tempering, Inc. v. Selas Corp., 902 F.2d 703,
715 (9th Cir. 1990)).

In this case, Judge Schiavelli granted summary judgment on
Defendants' defense of collateral estoppel.  (First MSJ Order at 7-
8.)[11]  The Ninth Circuit reversed that conclusion and remanded.
(Mandate at 3-4 ("Because the district court's decision regarding
collateral estoppel prevented the court and the parties from
discovering and considering evidence relating to Devereaux prong (2),
we reverse the district court on its determination regarding prong
(2).").)  Neither Judge Schiavelli nor the Ninth Circuit addressed the
merits of the coercive interrogation allegations or whether they are
cognizable under Devereaux prong (2).  Nor does the Court discern any
ruling by necessary implication that a coercive interrogation claim is
cognizable under Devereaux prong (2).  Accordingly, the Court is free
to make such a determination on remand.

---

[11]  Plaintiff states that Judge Schiavelli made an alternate
holding that the coercive interrogation evidence was insufficient to
create an issue of fact that the confession was coerced.  (Suppl.
Opp'n at 15.)  The Court has not located any such alternate holding in
the First MSJ Order.  In so far as Plaintiff's Devereaux prong (2)
claim was predicated on allegations of coercive interrogation, summary
judgment was granted based only on collateral estoppel.  (First MSJ
Order at 7-8.)  The order went on to evaluate other evidence presented
(i.e., the failure to investigate leads on other suspects, the failure
to account for inaccuracies in the confession and the forensic
evidence, and Cornelius Lee's falsification of his notes), and held
that such evidence did not create a genuine issue of fact as to
Deveraux prong (2).  (First MSJ Order at 8-9.)

**B.    PLAINTIFF'S PURPORTEDLY COERCIVE INTERROGATION CANNOT CONSTITUTE A <u>DEVEREAUX</u> PRONG (2) CONSTITUTIONAL VIOLATION.**

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)). Thus, the Court's analysis begins by identifying the specific constitutional right allegedly infringed. <u>Id.</u> at 394. Plaintiff argues that Defendants violated his due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. Fourteenth Amendment substantive due process protects individuals from "the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 845 (1998) (quoting <u>Hurtado v. California</u>, 110 U.S. 516, 527 (1884)).

The scope of the Fourteenth Amendment does not cover all aspects of arbitrary government behavior, however. Where an explicit textual source of constitutional protection exists, a claim should be analyzed under that source rather than the more generalized substantive due process provision in the Fourteenth Amendment. <u>See</u> <u>Graham</u>, 490 U.S. at 395; <u>see also</u> <u>Lewis</u>, 523 U.S. at 843 ("Substantive due process analysis is therefore inappropriate in this case only if respondents' claim is 'covered by' the Fourth Amendment.") For example, <u>Graham</u> held that claims of excessive force brought under § 1983 must be analyzed under the Fourth Amendment's prohibition against unreasonable seizures rather than under substantive due process. 490 U.S. at 395. The Supreme Court later reaffirmed that rule where a plaintiff alleged the defendants violated his substantive due process rights by

12

initiating a criminal prosecution without probable cause as proscribed by the Fourth Amendment.  See Albright v. Oliver, 510 U.S. 266, 274-75 (1994) (four-justice plurality); id. at 281 (Kennedy, J., concurring) ("I agree with the plurality that an allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process.")

The Fifth Amendment provides that no person shall be "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fifth Amendment's self-incrimination clause encompasses a proscription against using coerced confessions against a suspect. See Crowe v. County of San Diego, 593 F.3d 841, 862 (9th Cir. 2010). An interrogation is sufficiently coercive to violate the Fifth Amendment when "the totality of the circumstances shows that the officer's tactics undermined the suspect's ability to exercise his free will."  See Cunningham v. City of Wenatchee, 345 F.3d 802, 810 (9th Cir. 2003); see also Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) ("Under the Fifth Amendment, a confession is coerced or involuntary if the defendant's will was overborne at the time he confessed." (citation and internal quotations omitted)).  To give rise to a § 1983 claim for a Fifth Amendment violation, the coerced statement then must be used against the suspect at a criminal proceeding.  See Crowe, 593 F.3d at 862 ("mere coercion does not create a cause of action under § 1983 for a violation of the Self-Incrimination Clause, absent use of the compelled statement in a criminal case" (citing Chavez v. Martinez, 538 U.S. 760 (2003))). Thus, the Fifth Amendment protects against claims that a coerced

confession was used against a suspect in criminal proceedings.[12]

That is the factual basis for Plaintiff's claim here.  He claims that he was coerced into confessing and then the confession was used against him in his criminal prosecution.  (See Opp'n at 1 ("There is ample evidence . . . that Hall was subjected to criminal prosecution based on false evidence fabricated by the individual defendants . . . . [T]he detectives used abusive tactics to coerce Hall into affixing his name to a false statement they prepared that implicated Hall in a murder in which he had no involvement." (emphasis added).)  Hence, the Fifth Amendment covers Hall's due process claim as presented on remand.

Problematically for Plaintiff, he did not bring his § 1983 claim based on an alleged Fifth Amendment violation.  Indeed, Plaintiff had sought leave to amend his complaint to add a Fifth Amendment claim prior to the initial summary judgment motion being filed before Judge Schiavelli.  (See Mot. for Leave to File First Amended Complaint

_____

    [12]  In addition to that Fifth Amendment protection, some § 1983 coercive interrogation claims may be brought under the Fourteenth Amendment's due process clause.  Stoot v. City of Everett, 582 F.3d 910, 928 (2009), cert. denied sub nom., Jensen v. Stoot, __ S.Ct. ___, 2010 WL 1265967 (2010).  Unlike a claim under the Fifth Amendment, such a claim does not require a showing that the coerced statement was used against the suspect at a criminal proceeding.  See id. at 923. The level of coercion required, however, is greater than that required to state a Fifth Amendment claim.  A Fourteenth Amendment claim predicated on coercive interrogation techniques "is cognizable only if the alleged abuse of power 'shocks the conscience' and 'violates the decencies of civilized conduct.'" Id. at 928 (quoting Lewis, 523 U.S. at 846); see also Crowe, 593 F.3d at 866 (citing Rochin v. California, 342 U.S. 165, 172 (1952)).  This standard is "quite demanding." Stoot, 582 F.3d at 928.
    Plaintiff's opposition clarifies that he did not bring this type of Fourteenth Amendment coercive interrogation claim.  (See Opp'n at 13 ("Hall could have alleged, but did not allege, a stand-alone due process claim for damages.").)

1   (Docket # 84); see also Proposed First Amended Complaint at ¶¶ 33, 37

2   (Burton Decl. Ex. A) (Docket # 84).)  Judge Schiavelli denied that

3   request.  (June 19, 2007 Minute Order (Docket # 85).)  Plaintiff

4   cannot remedy his inadequate pleading now by repackaging a Fifth

5   Amendment coerced interrogation claim as one for deliberate

6   fabrication of evidence arising under the Fourteenth Amendment.

7   Accordingly, Plaintiff's claim fails as a matter of law.  See

8   Albright, 510 U.S. at 269, 274-75 (affirming dismissal of § 1983 case

9   brought by a plaintiff who chose to allege only a Fourteenth Amendment

10  due process violation where allegations fit within rubric of a Fourth

11  Amendment).

12      That conclusion is supported by the dearth of case law applying

13  Devereaux prong (2) in the context of a suspect's purportedly coercive

14  interrogation.  Devereaux analyzed allegations that the police relied

15  on false evidence obtained through improper interviews of purported

16  sex abuse victims.  See 263 F.3d at 1073.[13]  Similarly, subsequent

17  Ninth Circuit opinions have applied Devereaux prong (2) to assertions

18  that witnesses were coerced.  See Gausvik v. Perez, 345 F.3d 813, 817

19  (9th Cir. 2003) (suspect's children who accused him of sex abuse);

20  Cunningham, 345 F.3d at 812 (same); see also Stoot, 582 F.3d at 919

21  n.9 (applying Devereaux prong (2) analysis in rejecting argument that

22  constitutional violation arose out of purportedly coercive interview

23  of four-year-old girl who accused the plaintiff of sex abuse).

24  Plaintiff did not cite any Ninth Circuit case applying Devereaux prong

25

26      [13]  The Court also notes that Devereaux relied on Pyle v. Kansas,
    317 U.S. 213, 216 (1942), which provides that the knowing use by the
27  prosecution of perjured testimony in order to secure a criminal
    conviction violates the Constitution.  That perjured testimony was
28  provided in Pyle by third parties.  See id. at 214.

(2) to assertions that an interrogation of a suspect was coercive, nor did he present other case law addressing this issue.[14]

Not only is there an absence of Ninth Circuit authority applying Devereaux prong (2) in this context, but some Ninth Circuit authority can be read as suggesting that it would be improper to do so.  In Cunningham, the plaintiff's § 1983 claims were based both on allegations that the police coerced him into confessing to sexually abusing his children and on allegations that the police used coercive and abusive techniques in interviewing his children. 345 F.3d at 806, 810-12.  After finding qualified immunity for the plaintiff's Fifth Amendment and Devereaux prong (1) claims, which were predicated in part on his purportedly coerced confession, the Ninth Circuit analyzed Devereaux prong (2).  Notably, the prong (2) analysis focused entirely on the allegations that the police "used coercive tactics while interviewing [the plaintiff's] daughters."  Id. at 812.  The prong (2) analysis did not address the purportedly coercive interrogation of the

_____

[14]   Defendants note Doggett v. Perez, 348 F. Supp. 2d 1198, 1203-04 (E.D. Wash. 2004), in which the court summarily rejected a Devereaux prong (2) claim predicated on the interrogation of the plaintiffs because neither plaintiff actually confessed to the underlying crimes during their interrogations (i.e., no false evidence was obtained).  Thus, the court did not address whether purportedly coercive interrogations of a suspect could be cognizable under Devereaux prong (2).

Although not cited by the parties, the issue was similarly addressed in Ramirez v. County of Los Angeles, 397 F. Supp. 2d 1208 (C.D. Cal. 2005).  In that case, the plaintiff had raised "coercive behavior of law enforcement officers in pursuit of a confession."  Id. at 1226 n.9; see also id. at 1213 (identifying evidence that the defendant "attempted to coerce [the plaintiff] into confessing, threatening that he would be placed in the general population at the county jail, and threatened to 'go after' [the plaintiff's] brother, who is an LAPD officer").  As with Doggett, the court summarily rejected such a claim because the plaintiff failed to identify false evidence obtained from the interrogation.  Id. at 1226 n.9.

plaintiff himself. <u>Id.</u> While certainly not dispositive, the Ninth Circuit's silence undermines Plaintiff's position that <u>Devereaux</u> prong (2) applies here.[15]

In short, Plaintiff provides no Ninth Circuit authority allowing him to bring his claim under <u>Devereaux</u> prong (2). While Plaintiff's claim could be cognizable under the Fifth Amendment, it is not cognizable as a Fourteenth Amendment claim under <u>Devereaux</u> prong (2). Thus, summary judgment is appropriate.

**C.   PLAINTIFF DID NOT CREATE A TRIABLE ISSUE OF FACT OF DELIBERATE FABRICATION UNDER <u>DEVEREAUX</u> PRONG (2).**

Even if Plaintiff's claim were cognizable under <u>Devereaux</u> prong (2), his evidence is insufficient to create a triable issue of fact that the interrogation was sufficiently coercive and abusive to meet the <u>Devereaux</u> prong (2) standard. As noted above, <u>Devereaux</u> prong (2) requires a showing that "Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." 263 F.3d at 1076. The Ninth Circuit held that the plaintiff did not establish meet that standard because he merely raised various improprieties in the tactics used. <u>Id.</u> (citing plaintiff's assertions that the interviews did not comply with applicable guidelines and accepted professional standards,

---

[15] Plaintiff relies in several instances on <u>Ricciuti v. N.Y.C. Transit Authority</u>, 124 F.3d 123 (2d Cir. 1997) in arguing that his claim is cognizable under <u>Devereaux</u> prong (2). In that case, the Second Circuit held that a § 1983 claim could proceed based on evidence that an officer wrote a report that included purported oral admissions by the suspect that were never made. <u>Id.</u> at 126, 130. This is deliberate fabrication of evidence in its purest sense: creation from thin air of inculpatory evidence to be used against the suspect. There was no assertion that the evidence resulted from coercive and abusive interrogation tactics. Thus, the Court finds <u>Ricciuti</u> inapposite.

and did not "ensure the veracity of the information obtained"). Such evidence is insufficient because "[f]ailing to follow guidelines or to carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false evidence is quite another." Id. at 1076-77.

Neither party submits Ninth Circuit authority providing more specific guidance on the application of this standard. Both turn instead to authority analyzing coercive interrogations under other constitutional protections. Plaintiff argues that Devereaux prong (2) is satisfied if "'the totality of the circumstances shows that the officer's tactics undermined the suspect's ability to exercise his free will.'" (Opp'n at 15 (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)); see also Suppl. Opp'n at 18 ("[T]echniques that result in coercion and the statement being rendered not voluntary are certainly sufficient to establish the defendants knew or should have known they would yield false evidence, but such a showing is not necessary to satisfy the standard.")) As noted above, this is the standard applicable to a finding of coercion sufficient to render a confession involuntary under the Fifth Amendment. In contrast, Defendants argue that Devereaux prong (2) is only satisfied based on coerced interrogations when the tactics used shock the conscience or, perhaps, are tantamount to torture. (E.g., Mot. at 13; Reply at 3.) As also noted above, this is the standard applicable for finding an interrogation so extreme that the interrogation itself constitutes a due process violation even if any resulting statements are not used against the suspect in criminal proceedings.

Plaintiff's proposed "free will" standard is inconsistent with the language of Devereaux prong (2) itself, which requires more than

coercion.  It requires that the interrogation techniques be "so coercive and abusive that [officers] knew or should have known that those techniques would yield false information."  Devereaux, 263 F.3d at 1076.  That is, the tactics must be so extreme that the interrogator should know that the resulting confession is false.

In deciding what conduct would rise to the level of coercion and abuse sufficiently severe that interrogators "knew or should have known" that any resulting confession was false, the Court is guided by recent case law addressing coerced interrogation claims brought under the Fourteenth Amendment.  Such a claim "is cognizable only if the alleged abuse of power 'shocks the conscience' and 'violates the decencies of civilized conduct.'"  Stoot, 582 F.3d at 928 (quoting Lewis, 523 U.S. at 846).  In expounding on this standard, "Chavez refers to 'police torture or other abuse' as actionable under the Fourteenth Amendment, and Justice Kennedy's opinion [in Chavez] states that 'a constitutional right is traduced the moment torture or its close equivalents are brought to bear.'  Such language is consistent with the general rule that 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense' and therefore a violation of substantive due process."  Id. (citations omitted).

The Ninth Circuit in Stoot discussed the facts of Cooper v. Dupnik, 963 F.2d 1220 (9th Cir. 1992) (en banc) in determining that the interrogation at issue was not sufficiently egregious so as to violate substantive due process:

> Cooper, for example, involved a calculated plan to ignore the suspect's Constitutional right to remain silent as well as any request he might make to speak with an attorney . . ., to hold the suspect incommunicado, and to pressure and interrogate him until he confessed, in full recognition that such actions were unlawful under Miranda and would render

19

> any confession inadmissible at trial.  This court
> described the officers' techniques as sophisticated
> psychological torture designed to extract a confession
> after hours of mistreatment, the twentieth-century
> inquisitorial version of the Star Chamber.

Stoot, 528 F.3d at 929 (internal citations and quotations omitted).

The Court finds that the interrogation tactics must approach the standard articulated in Stoot to be so coercive and abusive that the Defendants knew or should have known that the resulting confession was false as required by Devereaux prong (2).  Applying such a stringent standard is consistent with the fact that only when such egregious tactics are used would an officer be assumed to know that a suspect was falsely implicating himself in a crime.[16]  That is especially true in deciding whether an officer should have known of the falsity of a confession implicating a suspect in a murder, an ultimate act against one's self-interest.  It is only at that point where the officer should know that a false confession is being given simply to succumb to the coercion or as a means to avoid further abuse.

The circumstances here do not approach those outlined in Stoot, and the Court concludes that Plaintiff has failed to raise a genuine issue of fact that Defendants knew or should have known that his confession was false based on the nature of their interrogation tactics.  Plaintiff's most significant evidence is that Defendants

_____

[16]   The Court does not attempt to articulate the conduct that would give rise to a Devereaux prong (2) violation in all circumstances, but only what is required when the claim is based on the interrogation of the plaintiff himself and resulting confession. The Court can imagine other circumstances, such as interviewing a child witness regarding alleged sexual abuse, where an interrogator should know that the information yielded is false based on a lower degree of coercion and abuse.  In such a case, the witness may be more vulnerable to providing false information based on, inter alia, her inexperience, the sensitive nature of the topic, and the fact that the false information implicates someone other than the witness herself.

threatened to remove his protective status as an informant, whereby he would be subjected to possible violence from other inmates.  Plaintiff

also has evidence, <u>inter alia</u>, that he was interrogated for several hours, was handcuffed, and that his request to speak with his attorney was denied.  No reasonable jury could find that such tactics are so extreme that Defendants knew or should have known that Plaintiff's confession was false.

In conclusion, even assuming Plaintiff could bring a claim under <u>Devereaux</u> Prong (2) in this context, he did not create a triable issue of fact that Defendants' interrogation techniques were so coercive and abusive that Arneson and Crocker knew or should have known that Plaintiff's confession was false.  Accordingly, summary judgment is appropriate for Arneson and Crocker as there was no constitutional violation under <u>Devereaux</u> prong (2).

**D.    QUALIFIED IMMUNITY APPLIES AS TO <u>DEVEREAUX</u> PRONG (2).**

Arneson and Crocker contend that summary judgment is also appropriate because they are entitled to qualified immunity.  The qualified immunity analysis entails a two-step inquiry:  first, the Court must decide whether Defendants violated Plaintiff's constitutional right; second, if so, the Court must decide whether the law was clearly established such that a reasonable officer would have known that his conduct was unlawful.  <u>Cunningham</u>, 345 F.3d at 810.

For the reasons stated above, Plaintiff failed to create a genuine issue of fact that Arneson and Crocker violated his right to be free from criminal charges based on evidence deliberately fabricated by the State.  For that reason alone, they are entitled to

1  qualified immunity.

2      Arneson and Crocker alternatively argue that they are entitled to
3  qualified immunity on the ground that the law in 1985 was not
4  sufficiently clear to provide notice that their conduct violated
5  Plaintiff's right to be free from criminal charges based on evidence
6  deliberately fabricated by the State. (See Mot. at 20; Reply at 10-
7  11.)  Qualified immunity attaches even where defendants violate a
8  plaintiff's constitutional right, if "'[t]he contours of the right
9  [were not] sufficiently clear that a reasonable official would
10 understand that what he is doing violates that right.'"  Saucier v.
11 Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483
12 U.S. 635, 640 (1987)).

13     Plaintiff responds that the right not to be criminally prosecuted
14 based on deliberately fabricated evidence was clearly established in
15 1985.  (Opp'n at 14-15.)  The Court agrees that such a right was
16 clearly established at that time.  See Devereaux, 263 F.3d at 1074-75
17 (finding such a right "virtually self-evident"); see also Pyle, 317
18 U.S. at 216 (holding that the knowing use by the prosecution of
19 perjured testimony violated the Constitution).  That there was a
20 clearly established right does not end the inquiry, however.  The
21 relevant inquiry is "whether the contours of the right were already
22 delineated with sufficient clarity to make a reasonable officer in the
23 defendant's circumstances aware that what he was doing violated the
24 right."  Devereaux, 263 F.3d at 1074 (emphasis added).  The Supreme
25 Court has emphasized that the qualified immunity inquiry "must be
26 undertaken in light of the specific context of the case, not as a
27 broad general proposition."  Brosseau v. Haugen, 543 U.S. 194, 198
28 (2004) (per curiam) (quoting Saucier, 533 U.S. at 201).  There must be

a "particularized" analysis of whether a reasonable officer in the specific circumstances of the case would understand that his conduct violated the right.  Id. at 199.  It is not required that there be "[a]n exact factual predicate case" or even one with materially similar facts, Kennedy v. City of Ridgefield, 439 F.3d 1055, 1066 n.7 (9th Cir. 2006), but there still must be reasonable notice of what constitutes constitutionally offensive conduct.

That notice was lacking in 1985 for the deliberate fabrication claim here.  While the Ninth Circuit provided a standard in Devereaux in 2001, there were not guideposts available explaining what constitutes deliberate fabrication in the context of a suspect's own interrogation.  Indeed, in 2010, the parties and the Court itself struggled to articulate the relevant standard for such a violation in this context.  Without the benefit of any authority analyzing what tactics used in interrogating a suspect are so coercive and abusive that they amount to a deliberate fabrication of evidence, Defendants were not on notice that their conduct in interrogating Plaintiff in this case was sufficiently coercive and abusive to violate that right.

Accordingly, for this separate reason, the Court concludes that Arneson and Crocker are entitled to qualified immunity.

**E.   PLAINTIFF'S MONELL CLAIM ALSO FAILS.**

The City moves for summary judgment on Plaintiff's claim seeking to hold it liable for any constitutional injury inflicted under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In opposing the pending motion, Plaintiff failed to come forward with evidence creating a triable issue of fact of an underlying constitutional violation, making summary judgment appropriate as to Plaintiff's Monell claim. See Aguilera v. Baca, 510 F.3d 1161, 1174 (9th Cir. 2007).

Even assuming Plaintiff had created a genuine issue of fact on his alleged constitutional violation, the Court concludes that summary judgment on the <u>Monell</u> claim would still be appropriate.  A municipality may be held liable under § 1983 only when it inflicts injury; it may not be held liable under a respondeat superior theory. <u>Monell</u>, 436 U.S. at 694.  Establishing a <u>Monell</u> claim generally takes one of two forms.  First, "a plaintiff can show that a municipality itself violated someone's rights or that it directed its employee to do so."  <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1185 (9th Cir. 2002).  For such an inquiry, "the focus is on the municipality's 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers.'"  <u>Id.</u> at 1187 (quoting <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 121 (1988)).

"Alternatively, in limited situations, a plaintiff can demonstrate that a municipality is responsible for a constitutional tort committed by its employee, even though it did not direct the employee to commit the tort."  <u>Id.</u> at 1185.  Hence, a plaintiff may establish liability based on the omissions of the municipality, but it may do so only by showing that the municipality's deliberate indifference led to the omission and that the omission caused the employee to commit the constitutional violation.  <u>Id.</u> at 1186.  "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation."  <u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994)).  This generally requires a showing that there was both legal authority establishing that the practice was unlawful and evidence of incidents of such a violation beyond those involving the plaintiff.  <u>See</u> <u>Stoot</u>, 582 F.3d at 929-30.

Plaintiff focuses on four disputed facts in contending that Monell liability could be imposed.  First, the LAPD "tacitly encourages faulty investigations" because it allowed detectives to close cases involving multiple perpetrators with only a single arrest. Second, the LAPD did not limit detectives' use of jailhouse informants, despite the unreliability of the information gained from them.  Third, the LAPD did not require that detectives attempt to ensure that a suspect's confession was not false by confirming that the confession fit the other evidence in the case.  Fourth, the LAPD did not require detectives to stop questioning a suspect when he declined to waive his Miranda rights.  (Opp'n at 23-24; see also Compl. ¶ 34.)

None of these assertions creates a genuine issue of fact that would allow Plaintiff to move forward to trial with his Monell claim because Plaintiff did not provide sufficient evidence of deliberate indifference.  For each identified disputed fact, Plaintiff failed to come forward with evidence that there was legal authority establishing that the particular practice was unlawful and/or that there were incidents beyond those with plaintiff of such a violation.  See Stoot, 582 F.3d at 929-30 (for Monell claim based on coercive interrogation purportedly caused by city's failure to properly train investigator in conducting juvenile interrogations and for allowing use of purportedly unlawful interrogation technique, affirming summary judgment based on failure to present authority establishing illegality of practice or evidence of other incidents).  Moreover, Plaintiff has not shown the required causal link between the practice and the alleged

1 | unconstitutional conduct.[17]

2

3 |     Accordingly, summary judgment is appropriate on Plaintiff's

4 | Monell claim against the City.

5 | **V.   CONCLUSION**

6 |     For the foregoing reasons, the Court **GRANTS** Defendants' motion

7 | for summary judgment.  First, the law of the case doctrine and the

8 | mandate rule do not preclude evaluation of whether Plaintiff's

9 | purportedly coercive interrogation could be cognizable under Devereaux

10 | prong (2).  Second, Arneson and Crocker are entitled to summary

11 | judgment as a suspect's own coercive interrogation is not cognizable

12 | under Devereaux prong (2).  Third, Arneson and Crocker are

13 | alternatively entitled to summary judgment because, even were a

14 | suspect's own coercive interrogation cognizable, Plaintiff failed to

15 | submit sufficient evidence to create a material issue of fact of a

16 | constitutional violation under Devereaux prong (2).  Fourth, Arneson

17 | and Crocker are alternatively entitled to qualified immunity on two

18 | grounds: (a) they did not violate Plaintiff's constitutional right and

19 | (b) the law was not sufficiently clear in 1985 to put reasonable

20

21 |     [17]  Plaintiff also contends in passing that Monell liability may attach here because the LAPD "ratified Arneson and Crocker's conduct

22 | in this case by clearing them after an internal affairs investigation . . . that should have uncovered their misconduct." (Opp'n at 25.)

23 | "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it.

24 | The policymaker must have knowledge of the constitutional violation and actually approve of it.  A mere failure to overrule a

25 | subordinate's actions, without more, is insufficient to support a § 1983 claim." Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004)

26 | (internal citations and quotations omitted).  Plaintiff failed to create a triable issue of fact, as the cited evidence shows only that

27 | there was an investigation that determined unspecified allegations raised by Hall to be unfounded.  (See DRSUF 72 (citing Arneson Dep. at

28 | 422–23).)

officers on notice that their conduct violated Plaintiff's constitutional right.  Fifth, with respect to Plaintiff's <u>Monell</u> claim, Plaintiff failed to submit sufficient evidence to create a triable issue of material fact that either (a) his constitutional right was violated or (b) the City had a practice or policy of depriving a suspect of that right.

**IT IS SO ORDERED.**

**DATED: April 20, 2010**

_____

**AUDREY B. COLLINS**

**CHIEF UNITED STATES DISTRICT JUDGE**