FILED

ORIGINAL

| | |
|---|---|
| Name John Burton, SBN 86029 | |
| Address 65 N. Raymond Ave., Suite 300 | 2010 MAY 12 AM II: 06 |
| City, State, Zip Pasadena, CA 91103 | |
| Phone 626 449-8300 | CLERK U.S. DISTRICT COURT |
| Fax 626 449-4417 | CENTRAL DIST. OF CALIF. |
| E-Mail jb@johnburtonlaw.com | LOS ANGELES |
| ☐ FPD  ☐ Appointed  ☐ CJA  ☐ Pro Per  ☒Retained | BY_____NL_____ |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Harold Hall, | CASE NUMBER: |
| PLAINTIFF(S), | CV 05-1977 ABC (AJWx) |
| v. | |
| City of Los Angeles, Los Angeles Police Department, Mark Arneson and Kenneth Crocker, | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____Harold Hall_____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☐ Order (specify):

☒ Judgment (specify):
Granting Defendants' Summary Judgment

☐ Other (specify):

Imposed or Filed on _____4/20/2010_____. Entered on the docket in this action on 4/22/2010_____.

A copy of said judgment or order is attached hereto.

May 10, 21010
Date

Signature
☐ Appellant/ProSe  ☒ Counsel for Appellant  ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

NOTICE OF APPEAL



RECEIPT # 601213

PAID

MAY 1 2 2010

Clerk, US District Court
C OURT 4612

PAID #455
CK# 7395

EXHIBIT A

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD C. HALL,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>                    Defendants. | CV 05-1977 ABC (AJWx)<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT |

Pending before the Court is the motion for summary judgment filed by Defendants City of Los Angeles, Detective Kenneth Crocker, and Detective Mark Arneson.  (Mot. (Docket # 195).)  Plaintiff Harold Hall filed an opposition, and Defendants filed a reply. (Opp'n (Docket # 198); Reply (Docket # 206).)  The parties also filed supplemental briefing requested by the Court.  (Defs.' Suppl. Brief (Docket # 216); Plf.'s Suppl. Opp'n (Docket # 217); Defs.' Suppl. Reply (Docket # 220).)  The motion came on for a hearing on April 19, 2010.  Having reviewed the materials presented, the record, and arguments of counsel, the Court hereby **GRANTS** the motion.

## I.   FACTUAL BACKGROUND

This case arises out of a series of unfortunate events.[1]   On June 27, 1985, siblings Nola Duncan and David Rainey were brutally murdered.   (PRSUF 1; DRSUF 33-34.)[2]   On August 17, 1985, Hall was arrested for a robbery unrelated to the Duncan-Rainey murders.   (PRSUF 4; DRSUF 6.)   Due to his role as a witness and informant in an unrelated gang shooting (the "54th Street shooting") (PRSUF 9; DRSUF 3), Hall was confined with other jailhouse informants separate from the general population to protect him from retribution from those against whom he testified (see DRSUF 8).   That protection was secured by Detective Wayne Dufort, who was investigating the 54th Street shooting.   (PRSUF 8; DRSUF 8.)   Hall was afraid that he would be subjected to significant violence if he were moved to the jail's general population.   (See DRSUF 11; see also Hall Decl. ¶¶ 2, 13-14 (Docket # 212).)

After officers received information from jailhouse informants linking Hall to the Duncan-Rainey murders (see PRSUF 10-12, 14-19), Hall was questioned about those murders (PRSUF 23).   The detectives

---

[1]   The Court takes the evidence in the light most favorable to Plaintiff.   In response to Plaintiff's papers, Defendants filed myriad evidentiary objections.   (Defs.' Joint Evidentiary Objections to Plf.'s Evidence (Docket # 222).)   These objections are identical or nearly identical to those raised previously to Judge Schiavelli with respect to the initial summary judgment motion.   (See Defs.' Joint Evidentiary Objections to Plf.'s Evidence (Docket # 115).)   Judge Schiavelli largely overruled the objections, though he did sustain a few of them.   (February 5, 2008 Minute Order at 4-6 (Docket # 163) ("First MSJ Order").)   Defendants provide no reason to depart from Judge Schiavelli's rulings, and the Court sees no reason to do so.

[2]   For ease of reference, the Plaintiff's Response to Defendants' Statement of Undisputed Facts (Docket # 201) is referred to as the "PRSUF" and the Defendants' Response to Plaintiff's Amended Statement of Undisputed Facts (Docket # 221) is referred to as the "DRSUF."

1  principally investigating the Duncan-Rainey murders were Arneson and
2  Crocker. (PRSUF 3.)[3]  On September 5, 1985, Hall was interviewed by
3  Crocker and Detective Lionel Roberts. (PRSUF at 23.)  That interview
4  lasted roughly one hour and Hall was not given his Miranda warnings
5  during it. (PRSUF at 23-24.)  Hall testified that the detectives
6  accused him of being involved in the murders, and that he denied such
7  involvement. (PRSUF 32.)  Hall did tell the detectives that he had
8  heard about the Duncan murder, though, and he and the detectives
9  discussed the purported involvement in the murders of an acquaintance
10  of Hall's, Jerry Knox. (See PRSUF at 25, 28-30.)  Hall actually knew
11  that Knox was in prison at the time of the murders and could not have
12  participated in them. (PRSUF 31.)

13      Hall was interviewed again for about an hour on September 9, 1985
14  by Arneson and Crocker. (PRSUF 33-34.)  During that interview, Hall
15  identified Knox in a photo lineup. (PRSUF 36.)

16      Defendants subsequently became aware that Knox was in prison at
17  the time of the murders. (PRSUF 37.)  Defendants confronted Hall with
18  that discovery on September 11, 1985. (PRSUF 37.)[4]  During the
19  ensuing interrogation, Hall confessed to various crimes including

20
21      [3] Plaintiff requests that the Court take judicial notice of
    Arneson's conviction of 46 felonies in 2009. (See Request for
22  Judicial Notice (Docket # 199); see also DRSUF 26 ("Arneson is a
    dishonest person").)  Plaintiff argues that the evidence undermines
23  Arneson's credibility. (Request for Judicial Notice at 2.)  It is not
    proper for the Court to make credibility findings on summary judgment,
24  however. See, e.g., Davis v. Team Elec. Co., 520 F.3d 1080, 1095 n.11
    (9th Cir. 2008). The Court views the evidence in the light most
25  favorable to Plaintiff. See id. Accordingly, Plaintiff's request for
    judicial notice is DENIED.
26
      [4] Several jailhouse informants had provided information
27  purportedly implicating Hall in the murder. By September 11, 1985,
    Arneson and Crocker knew that some of that information was not
28  accurate. (See DRSUF at 47, 50.)

1  stabbing Duncan.  (See DRSUF 23.)  That interrogation is the focus of

2  the pending motion.  Hall described the interrogation as being

3  conducted in several phases.  (PRSUF 39.)  The first phase was

4  conducted by Dufort and Detective Aaron Martin with respect to the

5  54th Street shooting.  (PRSUF 40.)  Arneson had contacted Dufort

6  earlier that day, "insisting" that he come to the jail to interview

7  Plaintiff.  (See DRSUF at 12.)  The first phase began at approximately

8  8:00 a.m. and continued until sometime near noon.  (PRSUF 40.)

9       Following that phase, Hall was moved to a different portion of

10  the same room where he was interviewed by Dufort, Martin, Crocker and

11  Arneson regarding the Duncan-Rainey murders.  (See PRSUF 41-42, 44.)

12  Hall's deposition testimony suggests that this phase continued until

13  roughly 6:00 p.m.  (See PRSUF 43.)[5]

14       During this stage of the questioning, Hall implicated himself in

15  the Rainey-Duncan murders.  (See PRSUF 44; DRSUF 23; ; see also Plfs.'

16  Ex. 147 (Docket # 212).)[6]  Arneson did most of the questioning about

17  the Duncan murder, using the "we know more than you think we know"

18  technique.  (DRSUF 19.)  Arneson falsely told Hall that there was

19  physical evidence tying him to the murder scene.  (PRSUF 63.)  Hall

20  also argues the investigators used Dufort's presence at the

21  interrogation as a threat that Hall could be placed in the jail's

22  _____

23       [5] Hall estimated that this phase of the interrogation lasted
     from "12:00 to until maybe 6:00," but he was "not [] sure."  (Hall
24  Dep. at 184:1-3 (Shapero Decl. Ex. 2).)  Defendants' evidence suggests
     that it may have been completed by about 1:30 p.m.  (See PRSUF 45.)
25  Taking the evidence in the light most favorable to Hall, the Court
     assumes the questioning on the Duncan-Rainey murders lasted until 6:00
26  p.m.

27       [6] Defendants acknowledge that they knew that certain details of
     the confession did not match other evidence they had obtained.  (See
28  DRSUF 52-53.)

1  general population, where he would be vulnerable to violence stemming

2  from his testimony regarding the 54th Street shooting.  (See DRSUF

3  20.)   In particular, Hall recounts the following exchange:

> Arneson said, "Let's go file on him since he doesn't
> want to tell us what we want to know.["]  Dufort said,
> "Harold, don't you realize that if they file this
> murder on you and you're convicted, you're going to be
> in prison with Ace Capone, the same guy you testified
> against.  You know as well as I do that they'll kill
> you.["]  He added, "You think all the inmates are
> trying to kill you now, wait till [sic] you get to
> state prison."  Crocker said, "You don't want to go to
> prison and face the guy you testified against, do you?
> You know that was a big thing, Harold, the 54th Street
> murders.  Ace Capone's homeboys are going to be after
> you."  Dufort said, "Think about it, Harold.  If you go
> to prison, every Blood gang is going to be after you
> for testifying against Ace Capone, and all the Crips
> are going to be after you for driving Bloods to the
> party."

13  (Hall Decl. ¶ 10.)  Hall asserts that he falsely confessed because he

14  felt he had to do so to remain protected from those who he believed

15  would kill him.  (PRSUF 66, 68.)[7]

16      Hall was not given his <u>Miranda</u> admonitions while he was

17  interrogated about the Duncan-Rainey murders and the 54th Street

18  shooting.  (DRSUF 16.)  Midway through the interrogation, he requested

19  to speak with his attorney, but Arneson told him that only guilty

20  people need to speak with attorneys and continued questioning him.

21  (DRSUF 22.)  Hall was handcuffed throughout the interrogation and was

22  not given food during the interrogation.  (PRSUF 51, 55.)  Hall's

23  recollection is that he was not allowed to use the bathroom during

24  this second phase of the interrogation, though he used it earlier that

25  morning and may have used it at the conclusion of the second phase of

27      [7]  Following the confession, Arneson and Crocker left to
interview another suspect (PRSUF 46) and Martin and Dufort
28  interrogated Plaintiff about the 54th Street shooting (see PRSUF 48).

1  the interrogation.  (See PRSUF 57-59.)

2       Hall was eventually charged with the Rainey-Duncan murders.  At

3  trial, the prosecution submitted evidence of Plaintiff's written

4  confession, two oral statements, and notes provided to detectives by

5  jailhouse informant Cornelius Lee.  Hall was convicted of both murders

6  and received life imprisonment without parole.

7       He then timely filed a habeas petition pursuant to 28 U.S.C. §

8  2254.  The Ninth Circuit ultimately found that petition meritorious

9  and overturned Hall's convictions for the Rainey-Duncan murders.  Hall

10 v. Dir. of Corrections, 343 F.3d 976 (9th Cir. 2003).  The Ninth

11 Circuit reversed the conviction for the Rainey murder due to

12 insufficient evidence.  The Ninth Circuit reversed the conviction for

13 the Duncan murder because Hall's constitutional due process rights

14 were violated as informant Lee admitted that he had lied at Hall's

15 preliminary hearing and deliberately fabricated the notes used against

16 Hall at trial in an effort to frame him.  Hall was released in August

17 2004 and the State has not attempted to retry him.

18 II.   PROCEDURAL BACKGROUND

19      This suit for damages under 28 U.S.C. § 1983 followed Hall's

20 release.  The matter was previously handled by Judge Schiavelli, who

21 granted Defendants' first summary judgment motion.  (First MSJ Order.)

22 Prior to Judge Schiavelli's hearing on the first summary judgment

23 motion, Plaintiff voluntary dismissed several claims.  Accordingly,

24 Judge Schiavelli's analysis focused on Plaintiff's claim of deliberate

25 fabrication of evidence against Arneson and Crocker.  That claim was

26 predicated on the Ninth Circuit's decision in Devereaux v. Abbey, 263

27 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc), which held that there is

28 "a clearly established constitutional due process right not to be

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 10 of 31   Page ID
#:1795
Case 2:05-cv-0197/-ABC-AJW   Document 226   Filed 04/20/10   Page 7 of 27

1  subjected to criminal charges on the basis of false evidence that was

2  deliberately fabricated by the government."  The Ninth Circuit

3  provided two avenues by which a plaintiff can succeed in bringing such

4  a claim; namely, a plaintiff

5      must, <u>at a minimum</u>, point to evidence that supports at
   least one of the following two propositions: (1)

6      Defendants continued their investigation of [Plaintiff]
   despite the fact that they knew or should have known

7      that he was innocent; or (2) Defendants used
   investigative techniques that were so coercive and

8      abusive that they knew or should have known that those
   techniques would yield false information.

9  <u>Id.</u> at 1076 (emphasis in original).

10     In ruling on the first summary judgment motion, Judge Schiavelli

11 found that Plaintiff failed to produce evidence sufficient to create a

12 triable issue of fact on <u>Devereaux</u> prong (1).  Judge Schiavelli also

13 determined that summary judgment was appropriate as to <u>Devereaux</u> prong

14 (2).  First, Judge Schiavelli ruled that collateral estoppel precluded

15 Plaintiff from meeting the <u>Devereaux</u> prong (2) standard with evidence

16 of the purportedly coercive interrogation of Plaintiff himself because

17 the Ninth Circuit's order granting habeas relief had found that it was

18 not coercive.[8]  Second, Judge Schiavelli ruled that the other

19 submitted evidence was insufficient to raise a triable issue of fact

20 on <u>Devereaux</u> prong (2).[9]

21

22 _____

23     [8]  The Ninth Circuit's opinion granting habeas relief included a
   footnote that stated:  "Hall also claims: . . . (2) that his September

24 11, 1985 confession was coerced and involuntary . . .  We have
   examined the record and find that these claims are without merit."

25 <u>Hall</u>, 343 F.3d at 981 n.5.

26     [9]  Judge Schiavelli also ruled that Plaintiff conceded that his
   evidence was insufficient to warrant a trial on the claim against the

27 LAPD and City of Los Angeles pursuant to <u>Monell v. Dep't of Social
   Servs.</u>, 436 U.S. 658 (1978).  The Ninth Circuit subsequently reversed

28 that aspect of the First MSJ Order.

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 11 of 31   Page ID
#:1706
Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 8 of 27

1   Plaintiff appealed to the Ninth Circuit.  In a memorandum

2 disposition, the Ninth Circuit affirmed in part, reversed in part and

3 remanded.  The Ninth Circuit affirmed the entry of summary judgment as

4 to Devereaux prong (1), agreeing that Plaintiff failed to submit

5 sufficient evidence that the Defendants knew or should have known he

6 was innocent.  With respect to Devereaux prong (2), the Ninth Circuit

7 reversed the Court's ruling that collateral estoppel prevented the

8 court from analyzing Plaintiff's evidence that his interrogation was

9 coercive and abusive.  The Ninth Circuit remanded on that issue.

10   Defendants filed the pending summary judgment motion on remand,

11 seeking judgment with respect to Devereaux prong (2), as well as the

12 claim for Monell liability.

13 **III. STANDARD**

14   Summary judgment shall be granted where "the pleadings, the

15 discovery and disclosure materials on file, and any affidavits show

16 that there is no genuine issue as to any material fact and that the

17 movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

18 56(c).  A defendant who moves for summary judgment bears the initial

19 burden of proving the absence of any triable issue of fact but need

20 not produce evidence negating elements of a claim for which the

21 plaintiff bears the burden of proof at trial.  Celotex Corp. v.

22 Catrett, 477 U.S. 317, 323-25 (1986).

23   A non-moving plaintiff can defeat summary judgment by producing

24 evidence establishing a "genuine issue" of material fact as to the

25 essential elements of the plaintiff's case, and on which the plaintiff

26 would bear the burden of proof at trial.  See id. at 322-23.  An issue

27 of fact is a genuine issue if it reasonably can be resolved in favor

28 of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-

1   51 (1986). The evidence of the nonmovant is to be believed, and all

2   justifiable inferences are to be drawn in his favor. <u>Id.</u> at 255. But

3   "mere disagreement or the bald assertion that a genuine issue of

4   material fact exists" does not preclude summary judgment. <u>Harper v.</u>

5   <u>Wallingford</u>, 877 F.2d 728, 731 (9th Cir. 1989).

6   **IV.   ANALYSIS**

7       Proceeding with Plaintiff's claim on remand raises several

8   unresolved issues. The first question before the Court is whether

9   assertions that a suspect was coercively interrogated could constitute

10   a cognizable claim under <u>Devereaux</u> prong (2). The Court ordered

11   supplemental briefing based on the recognition that <u>Devereaux</u> and the

12   subsequent Ninth Circuit cases applying <u>Devereaux</u> prong (2) address

13   techniques used in interviewing witnesses. This case, by contrast,

14   turns on the purportedly coercive interrogation of Plaintiff as a

15   suspect.[10] Hence, the Court first must determine whether <u>Devereaux</u>

16   prong (2) applies to Plaintiff's claim at all. As a precursor to that

17

18   _____

19      [10] In opposing the first summary judgment motion, Plaintiff argued that he had sufficient evidence to create a material issue of fact on <u>Devereaux</u> prong (2) based on other evidence, like Defendants'

20   failure to follow leads on other suspects, Defendants' failure to account for inaccuracies within Plaintiff's confession and the

21   forensic evidence, and informant Lee's falsification of evidence against Plaintiff. (<u>See</u> First MSJ Order at 8-9.) Judge Schiavelli

22   found such evidence insufficient to survive summary judgment. (<u>Id.</u>) On remand, Defendants argue that Plaintiff failed to appeal that

23   ruling and, thereby, waived the ability to argue that such evidence supports his claim under <u>Devereaux</u> prong (2). (Mot. at 9-10; Reply at

24   1.) Plaintiff's opposition brief does not address that argument, and the Court takes that silence as acquiescence that these arguments were

25   waived by his failure to appeal them. <u>See Newdow v. Congress of the</u>

26   <u>United States of America</u>, 435 F. Supp. 2d 1066, 1070 n.5 (E.D. Cal. 2006), <u>aff'd sub nom.</u>, <u>Newdow v. Lefevre</u>, __ F.3d ___, 2010 WL 816971

27   (9th Cir. Mar. 10, 2010); <u>see also</u> Local Rule 7-12. At any rate, even considering that evidence, Plaintiff has not created a triable issue

28   of fact under <u>Devereaux</u> prong (2).

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 13 of 31   Page ID
Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 10 of 27
#:9822

1   inquiry, the Court must decide whether such a determination is

2   precluded by either the law of the case doctrine or the mandate rule.

3   Second, assuming Plaintiff can bring a claim under <u>Devereaux</u> prong (2)

4   in this context, the parties dispute the proper standard to determine

5   whether the techniques rise to the level required to state a

6   deliberate fabrication of evidence claim, and whether Plaintiff has

7   created a genuine issue of fact under that standard.   Third, the Court

8   must determine whether Arneson and Crocker are entitled to qualified

9   immunity.   Fourth, the Court must determine whether Plaintiff has

10  created a triable issue of fact on his <u>Monell</u> claim against the City.

11      **A.   NEITHER THE LAW OF THE CASE NOR THE MANDATE RULE PRECLUDE**

12          **EVALUATION OF THE APPLICABILITY OF <u>DEVEREAUX</u> PRONG (2).**

13      Plaintiff argues as a threshold matter that granting summary

14  judgment on the ground that Plaintiff's claim is not cognizable under

15  <u>Devereaux</u> prong (2) is barred by the law of the case and the mandate

16  rule.  (Suppl. Opp'n at 14-16.)   The law of the case doctrine provides

17  that "a court is generally precluded from reconsidering an issue

18  previously decided by the same court, or a higher court in the

19  identical case."   <u>United States v. Lummi Indian Tribe</u>, 235 F.3d 443,

20  452 (9th Cir. 2000).   The "mandate rule," under which a district court

21  has no power or authority to deviate from a mandate of the Court of

22  Appeals, is a more powerful version of the law-of-the-case doctrine,

23  which prevents courts from reconsidering issues that have already been

24  decided in the same case.  <u>See Role Models Am., Inc. v. Geren</u>, 514

25  F.3d 1308, 1311 (D.C. Cir. 2008).   Under the mandate rule, "the

26  decision of an appellate court on a legal issue must be followed in

27  all subsequent proceedings in the same case."   <u>In re Rainbow Magazine,</u>

28  <u>Inc.</u>, 77 F.3d 278, 281 (9th Cir. 1996) (quoting <u>Herrington v. County</u>

1   of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993)).  "'For the doctrine []

2   to apply, the issue in question must have been decided explicitly or

3   by necessary implication in [the] previous disposition.'" Rebel Oil

4   Co., Inc. v. Atlantic Richfield Co., 146 F.3d 1088, 1093 (9th Cir.

5   1998) (quoting Milgard Tempering, Inc. v. Selas Corp., 902 F.2d 703,

6   715 (9th Cir. 1990)).

7        In this case, Judge Schiavelli granted summary judgment on

8   Defendants' defense of collateral estoppel. (First MSJ Order at 7-

9   8.)[11]  The Ninth Circuit reversed that conclusion and remanded.

10  (Mandate at 3-4 ("Because the district court's decision regarding

11  collateral estoppel prevented the court and the parties from

12  discovering and considering evidence relating to Devereaux prong (2),

13  we reverse the district court on its determination regarding prong

14  (2).").)  Neither Judge Schiavelli nor the Ninth Circuit addressed the

15  merits of the coercive interrogation allegations or whether they are

16  cognizable under Devereaux prong (2).  Nor does the Court discern any

17  ruling by necessary implication that a coercive interrogation claim is

18  cognizable under Devereaux prong (2).  Accordingly, the Court is free

19  to make such a determination on remand.

20

21  _____

22       [11]  Plaintiff states that Judge Schiavelli made an alternate
    holding that the coercive interrogation evidence was insufficient to
23  create an issue of fact that the confession was coerced.  (Suppl.
    Opp'n at 15.)  The Court has not located any such alternate holding in
24  the First MSJ Order.  In so far as Plaintiff's Devereaux prong (2)
    claim was predicated on allegations of coercive interrogation, summary
25  judgment was granted based only on collateral estoppel.  (First MSJ
    Order at 7-8.)  The order went on to evaluate other evidence presented
26  (i.e., the failure to investigate leads on other suspects, the failure
    to account for inaccuracies in the confession and the forensic
27  evidence, and Cornelius Lee's falsification of his notes), and held
    that such evidence did not create a genuine issue of fact as to
28  Deveraux prong (2).  (First MSJ Order at 8-9.)

**B.  PLAINTIFF'S PURPORTEDLY COERCIVE INTERROGATION CANNOT CONSTITUTE A <u>DEVEREAUX</u> PRONG (2) CONSTITUTIONAL VIOLATION.**

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)).  Thus, the Court's analysis begins by identifying the specific constitutional right allegedly infringed.  <u>Id.</u> at 394.  Plaintiff argues that Defendants violated his due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.  Fourteenth Amendment substantive due process protects individuals from "the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 845 (1998) (quoting <u>Hurtado v. California</u>, 110 U.S. 516, 527 (1884)).

The scope of the Fourteenth Amendment does not cover all aspects of arbitrary government behavior, however.  Where an explicit textual source of constitutional protection exists, a claim should be analyzed under that source rather than the more generalized substantive due process provision in the Fourteenth Amendment.  <u>See</u> <u>Graham</u>, 490 U.S. at 395; <u>see also</u> <u>Lewis</u>, 523 U.S. at 843 ("Substantive due process analysis is therefore inappropriate in this case only if respondents' claim is 'covered by' the Fourth Amendment.")  For example, <u>Graham</u> held that claims of excessive force brought under § 1983 must be analyzed under the Fourth Amendment's prohibition against unreasonable seizures rather than under substantive due process.  490 U.S. at 395.  The Supreme Court later reaffirmed that rule where a plaintiff alleged the defendants violated his substantive due process rights by

1  initiating a criminal prosecution without probable cause as proscribed

2  by the Fourth Amendment.   See Albright v. Oliver, 510 U.S. 266, 274-75

3  (1994) (four-justice plurality); id. at 281 (Kennedy, J., concurring)

4  ("I agree with the plurality that an allegation of arrest without

5  probable cause must be analyzed under the Fourth Amendment without

6  reference to more general considerations of due process.")

7       The Fifth Amendment provides that no person shall be "compelled

8  in any criminal case to be a witness against himself." U.S. Const.

9  amend. V.  The Fifth Amendment's self-incrimination clause encompasses

10 a proscription against using coerced confessions against a suspect.

11 See Crowe v. County of San Diego, 593 F.3d 841, 862 (9th Cir. 2010).

12 An interrogation is sufficiently coercive to violate the Fifth

13 Amendment when "the totality of the circumstances shows that the

14 officer's tactics undermined the suspect's ability to exercise his

15 free will."   See Cunningham v. City of Wenatchee, 345 F.3d 802, 810

16 (9th Cir. 2003); see also Juan H. v. Allen, 408 F.3d 1262, 1273 (9th

17 Cir. 2005) ("Under the Fifth Amendment, a confession is coerced or

18 involuntary if the defendant's will was overborne at the time he

19 confessed." (citation and internal quotations omitted)).   To give rise

20 to a § 1983 claim for a Fifth Amendment violation, the coerced

21 statement then must be used against the suspect at a criminal

22 proceeding.   See Crowe, 593 F.3d at 862 ("mere coercion does not

23 create a cause of action under § 1983 for a violation of the Self-

24 Incrimination Clause, absent use of the compelled statement in a

25 criminal case" (citing Chavez v. Martinez, 538 U.S. 760 (2003))).

26 Thus, the Fifth Amendment protects against claims that a coerced

27

28

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 17 of 31   Page ID
#:1802
Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 14 of 27

1  confession was used against a suspect in criminal proceedings.[12]

2      That is the factual basis for Plaintiff's claim here.  He claims

3  that he was coerced into confessing and then the confession was used

4  against him in his criminal prosecution.  (See Opp'n at 1 ("There is

5  ample evidence . . . that Hall <u>was subjected to criminal prosecution</u>

6  based on false evidence fabricated by the individual defendants . . .

7  . [T]he detectives <u>used abusive tactics to coerce Hall into affixing</u>

8  <u>his name to a false statement</u> they prepared that implicated Hall in a

9  murder in which he had no involvement." (emphasis added).)  Hence, the

10  Fifth Amendment covers Hall's due process claim as presented on

11  remand.

12      Problematically for Plaintiff, he did not bring his § 1983 claim

13  based on an alleged Fifth Amendment violation.  Indeed, Plaintiff had

14  sought leave to amend his complaint to add a Fifth Amendment claim

15  prior to the initial summary judgment motion being filed before Judge

16  Schiavelli.  (See Mot. for Leave to File First Amended Complaint

17

18  _____

19  [12]  In addition to that Fifth Amendment protection, some § 1983
    coercive interrogation claims may be brought under the Fourteenth

20  Amendment's due process clause.  Stoot v. City of Everett, 582 F.3d
    910, 928 (2009), cert. denied sub nom., Jensen v. Stoot, ___ S.Ct. ___,

21  2010 WL 1265967 (2010).  Unlike a claim under the Fifth Amendment,
    such a claim does not require a showing that the coerced statement was

22  used against the suspect at a criminal proceeding.  See id. at 923.
    The level of coercion required, however, is greater than that required

23  to state a Fifth Amendment claim.  A Fourteenth Amendment claim
    predicated on coercive interrogation techniques "is cognizable only if

24  the alleged abuse of power 'shocks the conscience' and 'violates the
    decencies of civilized conduct.'"  Id. at 928 (quoting Lewis, 523 U.S.

25  at 846); see also Crowe, 593 F.3d at 866 (citing Rochin v. California,
    342 U.S. 165, 172 (1952)).  This standard is "quite demanding."

26  Stoot, 582 F.3d at 928.
        Plaintiff's opposition clarifies that he did not bring this type

27  of Fourteenth Amendment coercive interrogation claim.  (See Opp'n at
    13 ("Hall could have alleged, but did not allege, a stand-alone due

28  process claim for damages.").)

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 18 of 31   Page ID
#:1803
Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 15 of 27

1  (Docket # 84); see also Proposed First Amended Complaint at ¶¶ 33, 37

2  (Burton Decl. Ex. A) (Docket # 84).)   Judge Schiavelli denied that

3  request.   (June 19, 2007 Minute Order (Docket # 85).)   Plaintiff

4  cannot remedy his inadequate pleading now by repackaging a Fifth

5  Amendment coerced interrogation claim as one for deliberate

6  fabrication of evidence arising under the Fourteenth Amendment.

7  Accordingly, Plaintiff's claim fails as a matter of law.   See

8  Albright, 510 U.S. at 269, 274-75 (affirming dismissal of § 1983 case

9  brought by a plaintiff who chose to allege only a Fourteenth Amendment

10  due process violation where allegations fit within rubric of a Fourth

11  Amendment).

12       That conclusion is supported by the dearth of case law applying

13  Devereaux prong (2) in the context of a suspect's purportedly coercive

14  interrogation.   Devereaux analyzed allegations that the police relied

15  on false evidence obtained through improper interviews of purported

16  sex abuse victims.   See 263 F.3d at 1073.[13]   Similarly, subsequent

17  Ninth Circuit opinions have applied Devereaux prong (2) to assertions

18  that witnesses were coerced.   See Gausvik v. Perez, 345 F.3d 813, 817

19  (9th Cir. 2003) (suspect's children who accused him of sex abuse);

20  Cunningham, 345 F.3d at 812 (same); see also Stoot, 582 F.3d at 919

21  n.9 (applying Devereaux prong (2) analysis in rejecting argument that

22  constitutional violation arose out of purportedly coercive interview

23  of four-year-old girl who accused the plaintiff of sex abuse).

24  Plaintiff did not cite any Ninth Circuit case applying Devereaux prong

25  _____

26       [13]   The Court also notes that Devereaux relied on Pyle v. Kansas,
    317 U.S. 213, 216 (1942), which provides that the knowing use by the
27  prosecution of perjured testimony in order to secure a criminal
    conviction violates the Constitution.   That perjured testimony was
28  provided in Pyle by third parties.   See id. at 214.

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 19 of 31   Page ID
#:1804
Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 16 of 27

1   (2) to assertions that an interrogation of a suspect was coercive, nor

2   did he present other case law addressing this issue.[14]

3        Not only is there an absence of Ninth Circuit authority applying

4   Devereaux prong (2) in this context, but some Ninth Circuit authority

5   can be read as suggesting that it would be improper to do so.   In

6   Cunningham, the plaintiff's § 1983 claims were based both on

7   allegations that the police coerced him into confessing to sexually

8   abusing his children and on allegations that the police used coercive

9   and abusive techniques in interviewing his children. 345 F.3d at 806,

10  810-12.   After finding qualified immunity for the plaintiff's Fifth

11  Amendment and Devereaux prong (1) claims, which were predicated in

12  part on his purportedly coerced confession, the Ninth Circuit analyzed

13  Devereaux prong (2).   Notably, the prong (2) analysis focused entirely

14  on the allegations that the police "used coercive tactics while

15  interviewing [the plaintiff's] daughters."   Id. at 812.   The prong (2)

16  analysis did not address the purportedly coercive interrogation of the

17

18        [14]   Defendants note Doggett v. Perez, 348 F. Supp. 2d 1198, 1203-
19  04 (E.D. Wash. 2004), in which the court summarily rejected a
    Devereaux prong (2) claim predicated on the interrogation of the
20  plaintiffs because neither plaintiff actually confessed to the
    underlying crimes during their interrogations (i.e., no false evidence
21  was obtained).   Thus, the court did not address whether purportedly
    coercive interrogations of a suspect could be cognizable under
22  Devereaux prong (2).
        Although not cited by the parties, the issue was similarly
23  addressed in Ramirez v. County of Los Angeles, 397 F. Supp. 2d 1208
    (C.D. Cal. 2005).   In that case, the plaintiff had raised "coercive
24  behavior of law enforcement officers in pursuit of a confession."   Id.
    at 1226 n.9; see also id. at 1213 (identifying evidence that the
25  defendant "attempted to coerce [the plaintiff] into confessing,
    threatening that he would be placed in the general population at the
26  county jail, and threatened to 'go after' [the plaintiff's] brother,
    who is an LAPD officer").   As with Doggett, the court summarily
27  rejected such a claim because the plaintiff failed to identify false
28  evidence obtained from the interrogation.   Id. at 1226 n.9.

Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 17 of 27

1  plaintiff himself.  Id.  While certainly not dispositive, the Ninth

2  Circuit's silence undermines Plaintiff's position that Devereaux prong

3  (2) applies here.[15]

4  　　　In short, Plaintiff provides no Ninth Circuit authority allowing

5  him to bring his claim under Devereaux prong (2).  While Plaintiff's

6  claim could be cognizable under the Fifth Amendment, it is not

7  cognizable as a Fourteenth Amendment claim under Devereaux prong (2).

8  Thus, summary judgment is appropriate.

9  　　　C.　　PLAINTIFF DID NOT CREATE A TRIABLE ISSUE OF FACT OF

10　　　　　　DELIBERATE FABRICATION UNDER DEVEREAUX PRONG (2).

11  　　　Even if Plaintiff's claim were cognizable under Devereaux prong

12  (2), his evidence is insufficient to create a triable issue of fact

13  that the interrogation was sufficiently coercive and abusive to meet

14  the Devereaux prong (2) standard.  As noted above, Devereaux prong (2)

15  requires a showing that "Defendants used investigative techniques that

16  were so coercive and abusive that they knew or should have known that

17  those techniques would yield false information."  263 F.3d at 1076.

18  The Ninth Circuit held that the plaintiff did not establish meet that

19  standard because he merely raised various improprieties in the tactics

20  used.  Id. (citing plaintiff's assertions that the interviews did not

21  comply with applicable guidelines and accepted professional standards,

22  _____

23  　　　[15]  Plaintiff relies in several instances on Ricciuti v. N.Y.C.
Transit Authority, 124 F.3d 123 (2d Cir. 1997) in arguing that his

24  claim is cognizable under Devereaux prong (2).  In that case, the
Second Circuit held that a § 1983 claim could proceed based on

25  evidence that an officer wrote a report that included purported oral
admissions by the suspect that were never made.  Id. at 126, 130.

26  This is deliberate fabrication of evidence in its purest sense:
creation from thin air of inculpatory evidence to be used against the

27  suspect.  There was no assertion that the evidence resulted from
coercive and abusive interrogation tactics.  Thus, the Court finds

28  Ricciuti inapposite.

1   and did not "ensure the veracity of the information obtained"). Such

2   evidence is insufficient because "[f]ailing to follow guidelines or to

3   carry out an investigation in a manner that will ensure an error-free

4   result is one thing; intentionally fabricating false evidence is quite

5   another." Id. at 1076-77.

6        Neither party submits Ninth Circuit authority providing more

7   specific guidance on the application of this standard. Both turn

8   instead to authority analyzing coercive interrogations under other

9   constitutional protections. Plaintiff argues that Devereaux prong (2)

10  is satisfied if "'the totality of the circumstances shows that the

11  officer's tactics undermined the suspect's ability to exercise his

12  free will.'" (Opp'n at 15 (quoting Haynes v. Washington, 373 U.S.

13  503, 513 (1963)); see also Suppl. Opp'n at 18 ("[T]echniques that

14  result in coercion and the statement being rendered not voluntary are

15  certainly sufficient to establish the defendants knew or should have

16  known they would yield false evidence, but such a showing is not

17  necessary to satisfy the standard.")) As noted above, this is the

18  standard applicable to a finding of coercion sufficient to render a

19  confession involuntary under the Fifth Amendment. In contrast,

20  Defendants argue that Devereaux prong (2) is only satisfied based on

21  coerced interrogations when the tactics used shock the conscience or,

22  perhaps, are tantamount to torture. (E.g., Mot. at 13; Reply at 3.)

23  As also noted above, this is the standard applicable for finding an

24  interrogation so extreme that the interrogation itself constitutes a

25  due process violation even if any resulting statements are not used

26  against the suspect in criminal proceedings.

27       Plaintiff's proposed "free will" standard is inconsistent with

28  the language of Devereaux prong (2) itself, which requires more than

18

1  coercion. It requires that the interrogation techniques be "so

2  coercive and abusive that [officers] knew or should have known that

3  those techniques would yield false information." Devereaux, 263 F.3d

4  at 1076. That is, the tactics must be so extreme that the

5  interrogator should know that the resulting confession is false.

6      In deciding what conduct would rise to the level of coercion and

7  abuse sufficiently severe that interrogators "knew or should have

8  known" that any resulting confession was false, the Court is guided by

9  recent case law addressing coerced interrogation claims brought under

10  the Fourteenth Amendment. Such a claim "is cognizable only if the

11  alleged abuse of power 'shocks the conscience' and 'violates the

12  decencies of civilized conduct.'" Stoot, 582 F.3d at 928 (quoting

13  Lewis, 523 U.S. at 846). In expounding on this standard, "Chavez

14  refers to 'police torture or other abuse' as actionable under the

15  Fourteenth Amendment, and Justice Kennedy's opinion [in Chavez] states

16  that 'a constitutional right is traduced the moment torture or its

17  close equivalents are brought to bear.' Such language is consistent

18  with the general rule that 'only the most egregious official conduct

19  can be said to be arbitrary in the constitutional sense' and therefore

20  a violation of substantive due process." Id. (citations omitted).

21      The Ninth Circuit in Stoot discussed the facts of Cooper v.

22  Dupnik, 963 F.2d 1220 (9th Cir. 1992) (en banc) in determining that

23  the interrogation at issue was not sufficiently egregious so as to

24  violate substantive due process:

25          Cooper, for example, involved a calculated plan to
        ignore the suspect's Constitutional right to remain

26          silent as well as any request he might make to speak
        with an attorney . . ., to hold the suspect

27          incommunicado, and to pressure and interrogate him
        until he confessed, in full recognition that such

28          actions were unlawful under Miranda and would render

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 23 of 31   Page ID
#:1808
Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 20 of 27

1       any confession inadmissible at trial.  This court
     described the officers' techniques as sophisticated
2       psychological torture designed to extract a confession
     after hours of mistreatment, the twentieth-century
3       inquisitorial version of the Star Chamber.

4  Stoot, 528 F.3d at 929 (internal citations and quotations omitted).

5      The Court finds that the interrogation tactics must approach the

6  standard articulated in Stoot to be so coercive and abusive that the

7  Defendants knew or should have known that the resulting confession was

8  false as required by Devereaux prong (2).  Applying such a stringent

9  standard is consistent with the fact that only when such egregious

10 tactics are used would an officer be assumed to know that a suspect

11 was falsely implicating himself in a crime.[16]  That is especially true

12 in deciding whether an officer should have known of the falsity of a

13 confession implicating a suspect in a murder, an ultimate act against

14 one's self-interest.  It is only at that point where the officer

15 should know that a false confession is being given simply to succumb

16 to the coercion or as a means to avoid further abuse.

17     The circumstances here do not approach those outlined in Stoot,

18 and the Court concludes that Plaintiff has failed to raise a genuine

19 issue of fact that Defendants knew or should have known that his

20 confession was false based on the nature of their interrogation

21 tactics.  Plaintiff's most significant evidence is that Defendants

22 _____

23    [16]  The Court does not attempt to articulate the conduct that
would give rise to a Devereaux prong (2) violation in all
24 circumstances, but only what is required when the claim is based on
the interrogation of the plaintiff himself and resulting confession.
25 The Court can imagine other circumstances, such as interviewing a
child witness regarding alleged sexual abuse, where an interrogator
26 should know that the information yielded is false based on a lower
degree of coercion and abuse.  In such a case, the witness may be more
27 vulnerable to providing false information based on, inter alia, her
inexperience, the sensitive nature of the topic, and the fact that the
28 false information implicates someone other than the witness herself.

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 24 of 31   Page ID
#:1809
Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 21 of 27

1   threatened to remove his protective status as an informant, whereby he

2   would be subjected to possible violence from other inmates.   Plaintiff

3

4

5   also has evidence, _inter alia_, that he was interrogated for several

6   hours, was handcuffed, and that his request to speak with his attorney

7   was denied.   No reasonable jury could find that such tactics are so

8   extreme that Defendants knew or should have known that Plaintiff's

9   confession was false.

10      In conclusion, even assuming Plaintiff could bring a claim under

11   _Devereaux_ Prong (2) in this context, he did not create a triable issue

12   of fact that Defendants' interrogation techniques were so coercive and

13   abusive that Arneson and Crocker knew or should have known that

14   Plaintiff's confession was false.   Accordingly, summary judgment is

15   appropriate for Arneson and Crocker as there was no constitutional

16   violation under _Devereaux_ prong (2).

17      **D.   QUALIFIED IMMUNITY APPLIES AS TO _DEVEREAUX_ PRONG (2).**

18      Arneson and Crocker contend that summary judgment is also

19   appropriate because they are entitled to qualified immunity.   The

20   qualified immunity analysis entails a two-step inquiry:   first, the

21   Court must decide whether Defendants violated Plaintiff's

22   constitutional right; second, if so, the Court must decide whether the

23   law was clearly established such that a reasonable officer would have

24   known that his conduct was unlawful.   _Cunningham_, 345 F.3d at 810.

25      For the reasons stated above, Plaintiff failed to create a

26   genuine issue of fact that Arneson and Crocker violated his right to

27   be free from criminal charges based on evidence deliberately

28   fabricated by the State.   For that reason alone, they are entitled to

21

Case 2:05-cv-01977-ABC-AJW  Document 228  Filed 05/12/10  Page 25 of 31  Page ID
#:1810
Case 2:05-cv-01977-ABC-AJW  Document 226  Filed 04/20/10  Page 22 of 27

1  qualified immunity.

2  Arneson and Crocker alternatively argue that they are entitled to

3  qualified immunity on the ground that the law in 1985 was not

4  sufficiently clear to provide notice that their conduct violated

5  Plaintiff's right to be free from criminal charges based on evidence

6  deliberately fabricated by the State.  (See Mot. at 20; Reply at 10-

7  11.)  Qualified immunity attaches even where defendants violate a

8  plaintiff's constitutional right, if "'[t]he contours of the right

9  [were not] sufficiently clear that a reasonable official would

10  understand that what he is doing violates that right.'"  Saucier v.

11  Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483

12  U.S. 635, 640 (1987)).

13  Plaintiff responds that the right not to be criminally prosecuted

14  based on deliberately fabricated evidence was clearly established in

15  1985.  (Opp'n at 14-15.)  The Court agrees that such a right was

16  clearly established at that time.  See Devereaux, 263 F.3d at 1074-75

17  (finding such a right "virtually self-evident"); see also Pyle, 317

18  U.S. at 216 (holding that the knowing use by the prosecution of

19  perjured testimony violated the Constitution).  That there was a

20  clearly established right does not end the inquiry, however.  The

21  relevant inquiry is "whether the contours of the right were already

22  delineated with sufficient clarity to make a reasonable officer in the

23  defendant's circumstances aware that what he was doing violated the

24  right."  Devereaux, 263 F.3d at 1074 (emphasis added).  The Supreme

25  Court has emphasized that the qualified immunity inquiry "must be

26  undertaken in light of the specific context of the case, not as a

27  broad general proposition."  Brosseau v. Haugen, 543 U.S. 194, 198

28  (2004) (per curiam) (quoting Saucier, 533 U.S. at 201).  There must be

22

Case 2:05-cv-01977-ABC-AJW  Document 228  Filed 05/12/10  Page 26 of 31  Page ID
#:1811
Case 2:05-cv-01977-ABC-AJW  Document 226  Filed 04/20/10  Page 23 of 27

1  a "particularized" analysis of whether a reasonable officer in the
2  specific circumstances of the case would understand that his conduct
3  violated the right.  Id. at 199.  It is not required that there be
4  "[a]n exact factual predicate case" or even one with materially
5  similar facts, Kennedy v. City of Ridgefield, 439 F.3d 1055, 1066 n.7
6  (9th Cir. 2006), but there still must be reasonable notice of what
7  constitutes constitutionally offensive conduct.

8      That notice was lacking in 1985 for the deliberate fabrication
9  claim here.  While the Ninth Circuit provided a standard in Devereaux
10 in 2001, there were not guideposts available explaining what
11 constitutes deliberate fabrication in the context of a suspect's own
12 interrogation.  Indeed, in 2010, the parties and the Court itself
13 struggled to articulate the relevant standard for such a violation in
14 this context.  Without the benefit of any authority analyzing what
15 tactics used in interrogating a suspect are so coercive and abusive
16 that they amount to a deliberate fabrication of evidence, Defendants
17 were not on notice that their conduct in interrogating Plaintiff in
18 this case was sufficiently coercive and abusive to violate that right.

19     Accordingly, for this separate reason, the Court concludes that
20 Arneson and Crocker are entitled to qualified immunity.

21     E.    PLAINTIFF'S MONELL CLAIM ALSO FAILS.

22     The City moves for summary judgment on Plaintiff's claim seeking
23 to hold it liable for any constitutional injury inflicted under Monell
24 v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In opposing the pending
25 motion, Plaintiff failed to come forward with evidence creating a
26 triable issue of fact of an underlying constitutional violation,
27 making summary judgment appropriate as to Plaintiff's Monell claim.
28 See Aguilera v. Baca, 510 F.3d 1161, 1174 (9th Cir. 2007).

Case 2:05-cv-01977-ABC-AJW  Document 228  Filed 05/12/10  Page 27 of 31  Page ID
#:1812
Case 2:05-cv-01977-ABC-AJW  Document 226  Filed 04/20/10  Page 24 of 27

1    Even assuming Plaintiff had created a genuine issue of fact on

2  his alleged constitutional violation, the Court concludes that summary

3  judgment on the Monell claim would still be appropriate.  A

4  municipality may be held liable under § 1983 only when it inflicts

5  injury; it may not be held liable under a respondeat superior theory.

6  Monell, 436 U.S. at 694.  Establishing a Monell claim generally takes

7  one of two forms.  First, "a plaintiff can show that a municipality

8  itself violated someone's rights or that it directed its employee to

9  do so." Gibson v. County of Washoe, 290 F.3d 1175, 1185 (9th Cir.

10  2002).  For such an inquiry, "the focus is on the municipality's

11  'policy statement, ordinance, regulation, or decision officially

12  adopted and promulgated by the body's officers.'" Id. at 1187 (quoting

13  City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988)).

14    "Alternatively, in limited situations, a plaintiff can

15  demonstrate that a municipality is responsible for a constitutional

16  tort committed by its employee, even though it did not direct the

17  employee to commit the tort." Id. at 1185.  Hence, a plaintiff may

18  establish liability based on the omissions of the municipality, but it

19  may do so only by showing that the municipality's deliberate

20  indifference led to the omission and that the omission caused the

21  employee to commit the constitutional violation. Id. at 1186.  "To

22  prove deliberate indifference, the plaintiff must show that the

23  municipality was on actual or constructive notice that its omission

24  would likely result in a constitutional violation." Id. (citing

25  Farmer v. Brennan, 511 U.S. 825, 841 (1994)).  This generally requires

26  a showing that there was both legal authority establishing that the

27  practice was unlawful and evidence of incidents of such a violation

28  beyond those involving the plaintiff. See Stoot, 582 F.3d at 929-30.

Case 2:05-cv-01977-ABC-AJW  Document 228  Filed 05/12/10  Page 28 of 31  Page ID
#:1813
Case 2:05-cv-01977-ABC-AJW  Document 226  Filed 04/20/10  Page 25 of 27

Plaintiff focuses on four disputed facts in contending that Monell liability could be imposed.  First, the LAPD "tacitly encourages faulty investigations" because it allowed detectives to close cases involving multiple perpetrators with only a single arrest. Second, the LAPD did not limit detectives' use of jailhouse informants, despite the unreliability of the information gained from them.  Third, the LAPD did not require that detectives attempt to ensure that a suspect's confession was not false by confirming that the confession fit the other evidence in the case.  Fourth, the LAPD did not require detectives to stop questioning a suspect when he declined to waive his Miranda rights.  (Opp'n at 23-24; see also Compl. ¶ 34.)

None of these assertions creates a genuine issue of fact that would allow Plaintiff to move forward to trial with his Monell claim because Plaintiff did not provide sufficient evidence of deliberate indifference.  For each identified disputed fact, Plaintiff failed to come forward with evidence that there was legal authority establishing that the particular practice was unlawful and/or that there were incidents beyond those with plaintiff of such a violation.  See Stoot, 582 F.3d at 929-30 (for Monell claim based on coercive interrogation purportedly caused by city's failure to properly train investigator in conducting juvenile interrogations and for allowing use of purportedly unlawful interrogation technique, affirming summary judgment based on failure to present authority establishing illegality of practice or evidence of other incidents).  Moreover, Plaintiff has not shown the required causal link between the practice and the alleged

Case 2:05-cv-01977-ABC-AJW  Document 226  Filed 04/20/10  Page 26 of 27

unconstitutional conduct.[17]

Accordingly, summary judgment is appropriate on Plaintiff's Monell claim against the City.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment.  First, the law of the case doctrine and the mandate rule do not preclude evaluation of whether Plaintiff's purportedly coercive interrogation could be cognizable under Devereaux prong (2).  Second, Arneson and Crocker are entitled to summary judgment as a suspect's own coercive interrogation is not cognizable under Devereaux prong (2).  Third, Arneson and Crocker are alternatively entitled to summary judgment because, even were a suspect's own coercive interrogation cognizable, Plaintiff failed to submit sufficient evidence to create a material issue of fact of a constitutional violation under Devereaux prong (2).  Fourth, Arneson and Crocker are alternatively entitled to qualified immunity on two grounds:  (a) they did not violate Plaintiff's constitutional right and (b) the law was not sufficiently clear in 1985 to put reasonable

---

[17]  Plaintiff also contends in passing that Monell liability may attach here because the LAPD "ratified Arneson and Crocker's conduct in this case by clearing them after an internal affairs investigation . . . that should have uncovered their misconduct."  (Opp'n at 25.)  "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it.  The policymaker must have knowledge of the constitutional violation and actually approve of it.  A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim."  Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004) (internal citations and quotations omitted).  Plaintiff failed to create a triable issue of fact, as the cited evidence shows only that there was an investigation that determined unspecified allegations raised by Hall to be unfounded.  (See DRSUF 72 (citing Arneson Dep. at 422-23).)

Case 2:05-cv-01977-ABC-AJW   Document 228   Filed 05/12/10   Page 30 of 31   Page ID
#:1815
Case 2:05-cv-01977-ABC-AJW   Document 226   Filed 04/20/10   Page 27 of 27

1 | officers on notice that their conduct violated Plaintiff's
2 | constitutional right.   Fifth, with respect to Plaintiff's <u>Monell</u>
3 | claim, Plaintiff failed to submit sufficient evidence to create a
4 | triable issue of material fact that either (a) his constitutional
5 | right was violated or (b) the City had a practice or policy of
6 | depriving a suspect of that right.
7 |
8 |         IT IS SO ORDERED.
9 |
10 | DATED: April 20, 2010
11 |
12 |
13 |                                        AUDREY B. COLLINS
14 |                        CHIEF UNITED STATES DISTRICT JUDGE
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

# PROOF OF SERVICE BY MAIL

1  
2  
3     I declare, under penalty of perjury, as follows:

4     I am over the age of eighteen years and am not a party to the within action. My

5 business address is 65 North Raymond Avenue, Suite 300, Pasadena, California, California,

6 91103. On the date set forth below, I served the foregoing Notice of Appeal on the

7 interested parties by placing a true copy thereof in a sealed envelope with first-class postage

8 paid thereon and depositing the same in the United States Mail at Pasadena, California,

9 addressed as follows:

10 Geoffrey R. Plowden  
    Wendy C. Shapero  
11 Deputy City Attorneys  
    LOS ANGELES CITY ATTORNEY  
12 200 N. Main Street, City Hall East, 6th Floor  
    Los Angeles, CA  90012-4129

13  
    Donald G. Forgey, Esq.  
14 LEWIS BRISBOIS BISGAARD & SMITH LLP  
    221 North Figueroa Street, Suite 1200  
15 Los Angeles, CA  90012

16  
17     I declare under penalty of perjury that the foregoing is true and correct and that this

declaration was executed on May 11, 2010 at Pasadena, California.

18  
19  
20                              Richard Thompson  
21  
22  
23  
24  
25  
26  
27  
28